# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
```
APPLERA CORP. and ROCHE MOLECULAR   :
SYSTEMS, INC.,
                                    :
    Plaintiffs and Counterclaim Defendants,   :    Case No. 3-98-CV-1201(JBA)
                                    :
          v.                          :
                                    :
MJ RESEARCH INCORPORATED and        :    March 23, 2004
MICHAEL and JOHN FINNEY,
                                    :
    Defendants and Counterclaim Plaintiffs.   :
```
-------------------------------------------------------x
```

### DEFENDANTS' COMMENTS AND OBJECTIONS TO THE
### JURY INSTRUCTIONS FOR PATENT PHASE

    Defendants', MJ Research Inc., Michael Finney and John Finney hereby set forth

their comments and objections to the Courts' proposed Jury Instructions for the Patent

Phase of this matter.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Applera Corporation and          :
Roche Molecular Systems, Inc.,   :
plaintiffs,                      :
                                 :
        v.                       :      3:98cv1201 (JBA)
                                 :
MJ Research Inc. and Michael     :
and John Finney, defendants.     :

### DEFENDANTS' COMMENTS AND OBJECTIONS TO THE JURY INSTRUCTIONS FOR PATENT PHASE

You have now heard all of the evidence in the case. I shall now instruct you concerning the law applicable to this case. After that, you will hear the arguments of counsel and then you will return to the jury room to deliberate in accordance with these instructions.

You must take the law as I give it to you and if any attorney or any witness or exhibit has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. The instructions as a whole constitute the law of this case and must be applied as a whole; you should not single out any one instruction.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than the instructions of the court. It would also be a violation of your sworn duty if you were to base any finding of fact on anything other than the evidence presented to you in this case.

1

In deciding the facts, you must not be swayed by bias or prejudice for or against any party. All persons stand equal before the law and are to be dealt with as equals in a court of justice.

You are also not to be swayed by sympathy. You should be guided solely by the evidence presented during trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and reach an impartial verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

### ROLE OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide should be drawn from the facts you determine, and you weigh the evidence.

No one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. You may review your notes for this purpose, but your notes are for your use only and not to be read or used by others.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

<u>ROLE OF ATTORNEYS</u>

Our courts operate under an adversary system in which we hope that the truth will emerge through the competing presentations of adverse parties. It is the role of the attorneys to press as hard as they can for their respective positions. In fulfilling that role, they have not only the right, but the obligation to make objections to the introduction of evidence they feel is improper. The application of the rules of evidence is not always clear, and lawyers often disagree. It has been my job as the judge to resolve these disputes. It is important for you to realize, however, that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other.

Similarly, one cannot help becoming involved with the personalities and styles of the attorneys, but it is important for you as jurors to recognize that this is not a contest among attorneys. You are to decide this case solely on the basis of the evidence. Remember, questions, statements and characterizations of the evidence by the attorneys are not evidence. Insofar as you find their closing arguments helpful, take advantage of them, but it is your memory and your evaluation of the evidence in the case that counts.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

## WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence. It is the witnesses' answers that are evidence. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness agreed with it, you may find those facts to be true, but you may not consider a fact to be true simply because it was in the lawyer's question.

Testimony that has been excluded or struck by the Court is also not evidence and may not be considered by you in rendering your verdict. Arguments by lawyers are not evidence because the lawyers are not witnesses. What they will say to you in their closing statements is intended to help you understand the evidence from their viewpoint in reaching your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls. Moreover, what I may have said during the trial or what I may convey in these instructions is not evidence and my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

WITNESS CREDIBILITY - GENERAL

You have had the opportunity to observe all the witnesses.
It is now your job to decide how believable each witness was in
his or her testimony. You are the sole judges of the credibility
of each witness and of the importance of his or her testimony.
In making these judgments, you should carefully scrutinize all
of the testimony of each witness, the circumstances under which
each witness testified, and any other matter in evidence which
may help you decide the truth and the importance of each
witness's testimony.

How do you determine truthfulness? You watched the witness
testify. Everything a witness said or did on the witness stand
counts in your determination. Was the witness candid, frank and
forthright? Or, did the witness seem as if he or she was hiding
something, being evasive or suspect in some way? How did the way
the witness testified on direct examination compare with how the
witness testified on cross-examination? Was the witness's
testimony contradictory? Did the witness appear to know what he
or she was talking about and did the witness strike you as
someone who was trying to report his or her knowledge
accurately?  Often it is not what a person says but how he or
she says it that moves us.

You should use all the tests for truthfulness that you
would use in determining matters of importance to you in your
every day life. You should consider any bias or hostility the
witness may have shown for or against any party as well as any
interest the witness has in the outcome of the case. The
parties' obvious interest in the outcome of the case should be

6

considered by you.  You should also consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of his or her testimony, its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Always remember that in assessing a witness's testimony you should use your common sense, your good judgment and your own life experience.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

## IMPEACHMENT OF WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. You may find an apparent inconsistency justified or unjustified. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If a witness testified untruthfully in some respect, you may consider that fact in deciding what credence you will attach to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.

8

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testified about something he or she knows by virtue of his or her own senses - something he or she has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence that tends to prove a disputed fact through proof of other facts. You infer a fact from other facts using your reason and experience and common sense.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

9

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

<u>INFERENCE DEFINED</u>

Attorneys use the term "inference" and in their arguments they may ask you to infer, on the basis of your reason, experience and common sense, from established facts, that some other fact exists. An inference is a deduction or conclusion which you, the jury, are permitted to draw - but not required to draw - from the facts that have been established by either direct or circumstantial evidence. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts. The plaintiffs ask you to draw one set of inferences, while the defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw. The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

However, no inference may be drawn from the mere fact that the plaintiffs have filed this lawsuit.

10

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

## NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

11

DRAFT: **March 18, 2004 (1:31pm)**
**FOR DISCUSSION PURPOSES ONLY**

<u>EXPERT WITNESSES</u>

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

12

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

## BURDENS OF PROOF - PATENT CASE

This is a civil case in which Applera Corporation (formerly
Perkin Elmer or PE Corporation) and Roche Molecular Systems,
Inc. are charging MJ Research, Michael Finney, and John Finney
with patent infringement. For ease, I am referencing in these
instructions to Applera and Roche collectively as just
"Applera".   I am also going to refer to MJ Research as just
"MJ." Applera has the burden of proving patent infringement by
"a preponderance of the evidence." This means Applera has to
produce evidence which, when considered in light of all of the
facts, leads you to believe that what it claims is more likely
true than not. To put it differently, if you were to put
Applera's evidence on one side of a scale and MJ's and the
Finneys' evidence on the opposite side, the evidence offered by
Applera would have to make the scales tip somewhat on their
side.  If you find that the evidence is evenly divided between
the parties, then you must decide the issue against Applera.[1]

In this case, MJ, Michael Finney, and John Finney claim
that some of plaintiff's patents are invalid. Because a patent
is presumed to be valid, MJ and the Finneys have the burden of
proving that a patent is invalid by "clear and convincing"[2]
evidence. Clear and convincing evidence is evidence that
produces an abiding conviction that the truth of a factual
contention is highly probable. Proof by clear and convincing

---

[1] Defendants had previously objected to the phrase "make the scales tip somewhat on their side" as improperly
suggesting that a verdict should be rendered in Applera's favor.  The Court rejected our objection.  Accordingly,
Defendants now propose adding a sentence to make it clear that any tie should be resolved in Defendants' favor.
[2] The Court inadvertently omitted quotation marks around the phrase "clear and convincing."

13

**DRAFT: March 18, 2004 (1:31pm)**
**FOR DISCUSSION PURPOSES ONLY**

evidence is thus a higher burden than proof by a preponderance of the evidence.

There are additional issues in the case, and for each of those I will also instruct you on the appropriate burden of proof, and which party has that burden.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiffs or defendants have met their burden of proof.

14

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

THE PARTIES AND THEIR CONTENTIONS[3]

I will first give you a summary of each side's contentions in this case. I will then instruct you on the law that applies to each contention.

Applera seeks money damages from MJ~~Research~~,[4] Michael Finney, and John Finney for infringement of the "PCR process" patents, specifically:

> claims 1, 3, 4, and 6 of the '202 PCR process patent;
>
> claim 1 of the '195 PCR process patent;
>
> claims 1 and 9 of the '188 PCR process patent;

Applera also seeks money damages from MJ~~Research~~, Michael Finney, and John Finney for infringement of the "thermal cycler" patents, specifically:

> claims 17, 33, and 45 of the '675 thermal cycler patent;
>
> claim 16 of the '493 thermal cycler patent; and
>
> claims 1, 44, 158, 160, and 161 of the '610 thermal cycler patent.

Applera claims that MJ~~Research~~, Michael Finney, and John Finney are liable for infringement of the PCR Process patents because they have induced MJ's customers ~~to infringe the PCR Process patents by inducing them~~ to perform the PCR process on their MJ Research thermal_cyclers.[5] In addition, Applera claims

---

[3] Defendants generally object to this instruction because it does not inform the jury that MJ contends that the patents are invalid because of Applera's inequitable conduct. While this is ultimately an issue for the Court to decide, the Court is empowered to submit special interrogatories to the jury for the determination of facts that underlie this equitable defense. See Duro-Last, Inc. v. Custome Seal, Inc., 321 F.3d 1098, 1110 (Fed. Cir. 2003); Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1998); Pollier v. CBS, Inc., 368 U.S. 464, 473 (1962).

[4] The Court previously stated that it would refer to MJ Research as "MJ."

[5] Defendants suggest this grammatical change to make the sentence clearer.

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

that MJ ~~Research, Michael Finney, and John Finney are~~ is[6] liable
for infringement of the thermal cycler patents as follows: 1) by
making, using, offering to sell, and selling thermal cyclers
that are claimed in these patents; 2) by inducing MJ's ~~Research~~
customers to directly infringe these patents; and, 3) with
respect to the '675 and '610 patents, by contributing to
another's infringement of the '675 and '610 patents by supplying
a component specially designed for the patented inventions.
Applera~~Plaintiff~~ claims that Michael Finney and John Finney are
each liable for <u>inducing</u> MJ's infringement <u>of the thermal cycler</u>
<u>patents</u>, and that the infringement of MJ, Michael Finney, and
John Finney was "willful."

MJ, Michael Finney, and John Finney each deny that they are
liable for inducing infringement of any of the PCR process
patents or for infringement of the thermal cycler patents, or
that they have willfully infringed any of the patents. In
addition, MJ, Michael Finney, and John Finney assert that the
'675, '493, and '610 thermal cycler patents are invalid. They do
not assert that the '202, '195 and '188 PCR process patents are
invalid.

---

[6] <u>There are no allegations that the Finneys directly infringed the patents-in-suit. Accordingly, reference to them in</u>
<u>this sentence should be deleted.</u>

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

CLAIM INFRINGEMENT

Before you can decide whether defendants have infringed the
PCR process patents and thermal cycler patents, you will have to
understand the patent "claims." The patent claims are the
numbered paragraphs at the end of the patent. The claims define
the boundaries or scope of the invention described and
illustrated in the patent. Only the claims of the patent can be
infringed. The specification, which is the written description
of the invention, cannot be infringed, nor can the drawings of a
patent.

Each of the claims at issue must be considered
individually, and to prove patent infringement, plaintiff needs
~~only~~ [7]to establish that at least one claim of that patent has
been infringed.

---

[7] Defendants object to the phrase "needs only" because it implies that Applera should prevail. To rectify this
prejudice, the word "only" should be deleted.

17

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

### DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in the patents. The first type is called an independent claim. An independent claim is one that does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

A dependent claim refers to at least one other claim in the patent and incorporates whatever that other claim says. To determine what a dependent claim covers, you must read both the dependent claim and the claim(s) to which it refers.

For example, Claim 11 of the '675 thermal cycler patent is an independent claim. You know this because this claim mentions no other claim. Accordingly, the words of this claim are read by themselves in order to determine what that claim covers.

Claim 17 of the '675 patent, on the other hand, is a dependent claim because it mentions Claim 11.[8] Therefore, the words of Claims 11 and 17 must be read together in order to determine what the dependent claim, claim 17, covers.

---

[8] Adding the phrase "because it mentions Claim 11" provides context for the example of a dependent claim.

18

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

<u>PATENT INFRINGEMENT - GENERALLY</u>

A patent owner may enforce his, her, or its right to
exclude others from making, using, offering to sell or selling
the patented invention by filing a lawsuit for patent
infringement. Here, Applera and Roche, the patent owners, have
sued MJ Research,[9] Michael Finney and John Finney, the accused
infringers, and have alleged that MJ's thermal cyclers and their
use in the performance of the PCR process infringe one or more
claims of the PCR process and thermal cycler patents. ~~For
simplicity sake, I will use just the name Applera in these
instructions.[10]~~

Any person or business entity which uses any process, or
makes, uses, offers to sell or sells, without the patent owner's
permission, any product legally protected by at least one claim
of a patent within the United States before the patent expires,
infringes the patent.

There are three ways to infringe a patent. One may: (1)
directly infringe a patent; (2) induce others to infringe a
patent, in which case the inducer is liable for infringement as
well as the direct infringer; or (3) contribute to the
infringement of a patent by another by supplying a component
specially designed for the patented invention, in which case
both the direct infringer and the contributory infringer would
be liable for patent infringement.

Next I will explain each type of infringement more
completely.

---

[9] The Court previously indicated that it would refer to MJ Research as "MJ."
[10] The Court has already instructed the jury that it will refer to Applera and Roche, collectively, as "Applera."

19

DRAFT: March 18, 2004 (1:31pm)
FOR DISCUSSION PURPOSES ONLY

### DIRECT INFRINGEMENT - KNOWLEDGE OF PATENT OR INTENT TO INFRINGE
### IS IMMATERIAL

~~MJ, Michael Finney, and John Finney would be liable for directly infringing a patent if you find that Applera has proven~~In order to establish that MJ is liable for direct infringement, Applera must prove by a preponderance of the evidence that MJ ~~Research, Michael Finney, and John Finney have~~has made, used, offered to sell or sold the invention defined in at least one claim of the thermal cycler patents.[11]

~~They would~~MJ may[12] also be liable for directly infringing a patent if you find that ~~they have~~it has sold the components of the invention defined in at least one claim of the thermal cycler patents in substantially unified and combined form such that the complete and operable assembly of components is a simple task of integration.

A person may directly infringe a patent without knowledge that what he or she is doing is an infringement of the patent. He or she may also infringe even though in good faith he or she believes that what he or she is doing is not an infringement of any patent.

---

[11] There are no allegations that the Finneys directly infringed any of the patents-in-suit. Accordingly, reference to the Finneys in this instruction should be deleted. Also, the phrase "would be liable" is prejudicial because it implies that MJ should be found liable. Defendants have proposed a more neutral way of stating the same concept.

[12] Reference to "they" is inappropriate because there are no allegations of direct infringement against the Finneys. Also, the prejudicial word "would" has been substituted with the more neutral "may."

20