DIRECT INFRINGEMENT: DOCTRINE OF EQUIVALENTS

If you conclude that Applera has not proved literal infringement of a patent claim, you must then consider whether it has proved infringement under the "doctrine of equivalents," which I told you I would explain. You may find that an accused product or its use infringes a patent claim, even if not all of the component parts or steps of the claim are present in MJ's product or its use, if each of the component parts or steps of MJ's product or its use are either the same as or substantially equivalent to that specified in the patent claim. This is called the "doctrine of equivalents."

In deciding if Applera has proved defendants' infringement under the doctrine of equivalents, you must look at each individual limitation of the patent claim and decide whether the accused product or its use has an identical or equivalent part or step. The test to determine equivalence under the doctrine of equivalents for a particular claim limitation is whether any differences between the claim limitation and the component part or step in the accused product or its use were "insubstantial." One way to decide whether any differences are insubstantial is to consider whether the component part or step in the accused product or its use performs substantially the same function in substantially the same way to produce substantially the same result as the limitation in the patent claim.

Another way to decide whether any differences between a

30

patent claim limitation and the component part or step in the accused product or its use are insubstantial, is to consider whether persons of ordinary skill in the field would have known of the interchangeability of the part or step of the accused product or its use with the claim limitation.  It is not a requirement for proof of doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether any component part or step of the defendants' product or its use is equivalent to that defined in the claims of the PCR and thermal cycler patents is to be determined as of the time of the alleged infringement.

31

## OPEN ENDED CLAIMS

You will see that the preamble to the patent claims use the transitional phrase "comprising" or "comprises."  These words are interpreted to mean the same as "including" or "containing."  These claims are thus open-ended claims.  For your purposes, this means that, if you find that MJ's product or its use includes all of the components or process steps in any of the PCR process or thermal cycler patent claims, the fact that it may also include an additional part or method step is irrelevant.  The presence of additional parts or process steps in the accused product or process does not mean that the product or process does not infringe a patent claim.

32

<u>CONSTRUCTION OF CLAIMS</u>

When the parties dispute the meaning of patent language, it is for the Court to determine what the patent claims mean.  That is called the <u>Markman</u> construction which you have heard referenced during the trial.  Where I have construed the meaning of certain claims, I will be instructing you as to that meaning.  As you decide the issues of infringement and validity, you must apply the meanings of the claim terms that I give you along with all other terms used in the patent claim, to which you will give their ordinary meaning.

I will now tell you the meanings of terms used in the patent claims which I have determined.   These constructions are incorporated into the attached patent claims reference sheet.

Unless otherwise instructed, the preamble of each claim is not a limitation, and you should not consider it when you decide the issues of infringement and validity.

## PCR PROCESS PATENTS: STIPULATED CONSTRUCTION

### The '202 Patent

Claims 1, 3, 4, and 6 of the '202 patent cover the performance of the nucleic acid amplification method known as the Polymerase Chain Reaction ("PCR").

### The '195 Patent

Claim 1 of the '195 patent covers an application of PCR,

33

detecting the presence or absence of at least one specific nucleic acid in a sample. According to the claim, PCR is performed and the amplified specific nucleic acid, when present, is then hybridized with a labeled oligonucleotide probe and detected.

**The '188 Patent**

Claim 1 of the '188 patent covers the performance of PCR using a thermostable DNA polymerase.

Claim 9 of the '188 patent covers the performance of PCR using a thermostable enzyme, in which the heating and cooling steps required by PCR are automated by a machine that controls temperature levels, transitions from one temperature to another, and controls the timing of the temperature levels.

**THERMAL CYCLER PATENTS**

I am now going to quote for you the patent claim language which was disputed by the parties (you will see that in bold face) and then tell you the meaning that you are to apply to this claim language.

**The '675 Patent**

Claim 17 (contains all of the limitations of claim 11)

- "means for heating and cooling said container to or at any of a plurality of temperatures . . . which heating and cooling means includes a Peltier device"

34

This is a means-plus-function term.  The function that is claimed is heating and cooling a container to or at any of a plurality of temperatures.  The structure that performs this function is any heating and cooling apparatus that includes a metal heat-conducting block and a Peltier device.  The metal heat-conducting block must have a reaction well, which may be either a recess machined into the metal block or a plastic container that sits in a recess formed in the block.  The recess need not be in the top surface of the metal block.  The ordinary meaning of a recess machined into a block is a solid body of metal with a receding or hollow place in its surface.

The next claim language in dispute is:

–    "computer means . . . for receiving, storing, and
accessing a plurality of checkpoints from a user, . . . said
accessing a plurality of checkpoints comprising generating
control signals therefrom at the control input of said means
for heating and cooling to cause said temperature to be
achieved at said container and maintained for said time for
which said container is to be maintained at said one
temperature"

This is a means-plus-function term.  The claimed function is receiving, storing and accessing a plurality of checkpoints from a user, said accessing a plurality of checkpoints comprising generating control signals therefrom at the control input of the means for heating and cooling to cause said temperature to be achieved and maintained.  The structure that performs this function is a computer programmed to run with a process control

35

algorithm.  This claim term also covers equivalent structures.

The parties also disputed the meaning of the following claim language:

- "user controllable means programmed to produce at least one subset of sequenced checkpoints defining temperatures and times for a selected cycle of thermal denaturation of double-stranded DNA, primer annealing to single-stranded DNA and primer extension by a DNA polymerase, where said subset is less than the total number of checkpoints which will be accessed in sequence, which can be repeated a user-defined number of times before the checkpoint following the last checkpoint in the subset of sequence checkpoints is accessed"

This also is a means-plus-function term.  The claimed function is producing at least one subset of sequenced checkpoints defining temperatures and times for a selected cycle of PCR.  The structure that performs this function is a computer programmed to produce a subset of sequenced heating, cooling, and/or temperature maintaining steps in accordance with a PCR protocol where the subset can be cycled a user-defined number of times after which a post-cycling temperature step is accessed.  In other words, the structure is a computer programmed to perform a PCR protocol.  This claim term also covers equivalent structures.

Claim 33

The next claim language in dispute is:

- "means for heating and cooling said container to or at any of a plurality of temperatures"

36

This too is a means-plus-function term.  The claimed function is heating and cooling a container to or at any of a plurality of temperatures.  The structure that performs this function is any heating and cooling apparatus that includes a metal heat-conducting block.  The metal heat-conducting block must have a reaction well, which may be either a recess machined into the metal block or a plastic container that sits in a recess formed in the block.  The recess need not be in the top surface of the metal block.  The ordinary meaning of a recess machined into a block is a solid body of metal with a receding or hollow place in its surface.

The parties also disputed the meaning of the following claim language:

> -    "computer means . . . for receiving, storing, and accessing a plurality of checkpoints from a user, . . . said accessing a plurality of checkpoints comprising generating control signals therefrom at the control input of said means for heating and cooling to cause said first temperature to be achieved at said container and maintained for said first time"

This is a means-plus-function term.  The claimed function is receiving, storing and accessing a plurality of checkpoints from a user, said accessing a plurality of checkpoints comprising generating control signals therefrom at the control input of the means for heating and cooling to cause said temperature to be achieved and maintained.  The structure that performs this function is a computer programmed to run with a process control

37

algorithm.  This claim term also covers equivalent structures.

The next claim language in dispute is:

- "means programmed to define at least one subset of
  sequenced checkpoints during which said denaturation,
  hybridization, and extension occur, where said subset
  is less than the total number of checkpoints which will
  be accessed in sequence, which can be repeated a number
  of times before the checkpoint subsequent to the last
  checkpoint in the subset of sequence checkpoints is
  accessed"

This is a means-plus-function term.  The claimed function is

defining at least one subset of sequenced checkpoints defining

temperatures and times for a selected cycle of PCR.  The

structure that performs this function is a computer programmed to

define a subset of sequenced heating, cooling, and/or temperature

maintaining steps in accordance with a PCR protocol where the

subset can be cycled a number of times after which a post-cycling

temperature step is accessed.  In other words, the structure is a

computer programmed to perform a PCR protocol.  This claim term

also covers equivalent structures.

**Claim 45 (contains all limitations of claims 40 and 44)**

The parties also disputed the meaning of the following claim

language:

- "means for heating and cooling said container to or at
  any of a plurality of temperatures . . . wherein said
  means for heating and cooling said container includes a
  metal block . . . compris[ing] a plurality of
  receptacles for supporting a plurality of containers"

38

This is a means-plus-function term. The claimed function is heating and cooling a container to or at any of a plurality of temperatures. The structure that performs this function is any heating and cooling apparatus that includes a metal heat-conducting block with a plurality of recesses. The recesses need not be in the top surface of the metal block. The ordinary meaning of a recess machined into a block is a solid body of metal with a receding or hollow place in its surface.

This claim limitation cannot be infringed under the doctrine of equivalents by any heating and cooling means that does not have a metal block with a plurality of recesses.

The next claim language in dispute is:

- "computer means . . . for receiving and storing a plurality of data input from a user, . . . and for accessing said plurality of stored data and generating control signals therefrom at the control input of said means for heating and cooling to cause said temperature cycling profile to be achieved at said container"

This is a means-plus-function term. The claimed function is receiving and storing a plurality of data input from a user, and for accessing said plurality of stored data and generating control signals therefrom at the control input of said means for heating and cooling to cause said temperature cycling profile to be achieved at said container. The structure that performs this function is a computer programmed to run with a process control algorithm. This claim term also covers equivalent structures.

39

The parties also dispute the meaning of the following claim language:

- "user controllable means for defining at least one subset of sequenced steps . . . which can be repeated a user-defined number of times before the step following the last step in the subset o[f] sequenced checkpoints i[s] accessed"

This is a means-plus-function term. The claimed function is defining at least one subset of sequenced steps. The structure that performs this function is a computer programmed to permit a user to select a subset of sequenced steps in accordance with a PCR protocol, and not a computer programmed to perform a selected cycle of PCR. This claim term also covers equivalent structures.


**The '493 Patent**

**Claim 16 (contains all of the limitations of claim 1)**

The next claim language in dispute is:

- "a plurality of reaction mixtures comprising at least one single-stranded or double-stranded nucleic acid sequence to be amplified, four different deoxyribonucleotides, and a pair of oligodeoxyribonucleotide primers for each said at least one nucleic acid sequence to be amplified"

This term calls for "a plurality of PCR reaction mixtures."


**The '610 Patent**

**Claim 1**

The parties also dispute the meaning of the following claim language:

40

> – "a sample block having at least one well for said at
> least one sample tube"

This term calls for a sample block with a recess below the top surface of the block.


The next claim language in dispute is:

> – "heating and cooling means controlled by said computing
> apparatus for changing the temperature of said sample
> block"

This is a means-plus-function term. The claimed function is heating and cooling for changing the temperature of said sample block. The structure that performs the function of heating for changing the temperature of said sample block is a film heater or a fluid/gas flow heating system. The structure that performs the function of cooling for changing the temperature of said sample block is a fluid flow cooling system having cooling channels in the block. This claim term also covers equivalent structures.


The parties also dispute the meaning of the following claim language:

> – "means for determining the temperature of said block in
> a first sample interval, wherein said first sample
> interval is an interval of time designated as time n"

This is a means-plus-function term. The claimed function is determining the temperature of said block in a first sample interval. The structure that performs this function is a temperature sensor attached to the block. This claim term also

41

covers equivalent structures.

**Claim 44 (contains all of the limitations of claim 1)**

The next claim language in dispute is:

- "means for overshooting the temperature of said sample
  block above a desired sample temperature, thereby
  decreasing an upramp time required for said liquid sample
  mixture to achieve said desired sample temperature"

This is a means-plus-function term. The claimed function is
overshooting the temperature of said sample block above a desired
sample temperature. The structure that performs this function is
a computer programmed with a controlled overshoot algorithm. This
claim term also covers equivalent structures.

**Claim 158 (contains all of the limitations of claim 1)**

If Claim 1 is not infringed, this claim is not infringed.

**Claim 160**

The next claim language in dispute is:

- "tapered wells in its top surface, and a plurality of
  individual reaction tubes . . . which project above the
  top surface of the block when the tubes are placed in
  said wells"

This language in the preamble of claim 160 is a claim
limitation and calls for wells recessed below the top surface of
the block.

42

The parties also dispute the meaning of the following claim language:

- **"resiliently deformable sealing caps"**

This term calls for sealing caps that can be compressed by pressure or stress and still bounce or spring back into shape after the pressure is removed.

The next claim language in dispute is:

- **"platen"**

This term calls for a flat plate that comes in direct contact with the caps.

The next claim language in dispute is:

- **"support means for supporting the platen above the block"**

This is a means-plus-function term. The claimed function is supporting the platen above the block. The structure that performs this function includes both a cover and a lead screw. This claim term also covers equivalent structures.

**Claim 161** (contains all of the limitations of claim 160)

If Claim 160 is not infringed, Claim 161 cannot be infringed.

INFRINGEMENT/DEFENDANTS' IMPROVEMENTS

You may find that the accused products represent an improvement over the inventions defined in the thermal cycler patent claims.  However, you are not to presume that means that MJ cannot infringe these patent claims.  As long as the accused products include each and every element of at least one of the thermal cycler patent claims, or if the accused products are found to be equivalent under the doctrine of equivalents, then that patent claim is infringed by the accused products despite improvements.

44

## WILLFUL INFRINGEMENT

If you find on the basis of the evidence and the law I have explained that Applera has proved MJ infringed, induced infringement, or contributed to the infringement of at least one of the PCR process or thermal cycler patent claims, you must then decide whether or not Applera has proved by clear and convincing evidence that such infringement was willful.

Willful infringement is established where Applera has proved two things: (1) that MJ was aware of Applera's patents;  and (2) that MJ had no reasonable good faith basis for concluding that it did not infringe Applera's patent, that is, MJ knew about the patent and did not exercise due care to determine whether or not it was infringing the patent.

In deciding whether or not MJ willfully infringed any of Applera's patents, you must consider the totality of the circumstances.  The proper time for assessing willfulness starts at the time the infringer received notice of infringement and continues throughout the time it has engaged in infringing conduct.

If a party has exercised due care, it may continue to manufacture and may present what in good faith it believes to be a legitimate defense.  Even if its defense proves unsuccessful, that fact alone cannot establish that its infringement was willful.

One factor to consider with respect to whether MJ acted in

45

good faith and with due care in determining the willfulness of the infringement you found proved is whether MJ obtained and followed competent legal advice from an attorney after becoming aware of the PCR process or thermal cycler patents and before beginning or continuing the infringing activities you found proved.  A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers.  Moreover, you should consider whether MJ actually relied upon and followed its attorney's opinion.  Whether a legal opinion was legally correct or not is irrelevant  so long as it was sufficiently thorough in the context of all the circumstances, to instill a reasonable belief in the infringer that the patent might reasonably be held invalid, not infringed, or not enforceable.

Another factor in determining whether Applera has proved by clear and convincing evidence that MJ willfully infringed the patents is your assessment of whether or not MJ copied the products or processes covered by the patent claims or, whether MJ as a competitor of Applera, tried to match a product of Applera with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

46

## PERSONAL LIABILITY FOR INFRINGEMENT BY CORPORATION

Applera alleges that Michael Finney and John Finney should each be held personally liable for actively assisting MJ to induce infringement of the PCR process patents, and for actively assisting MJ to infringe, induce infringement, and contribute to the infringement of the thermal cycler patents. Corporate officers who actively assist with their corporation's direct infringement, inducement of infringement, or contributory infringement may be personally liable for inducing infringement. To prove that either or both of the Finneys, as MJ's corporate officers, is or are personally liable for inducing MJ's infringement, induced infringement, or contributory infringement, Applera must prove that either or both Finneys knowingly induced such infringement and possessed specific intent to encourage their corporation's infringement, inducing infringement, or contributory infringement, and not merely to have had knowledge of the acts constituting infringement, inducement of infringement, or contributory infringement.

To summarize, Applera has the burden of proving that the individual defendants' actions induced MJ's infringing acts <u>and</u> that either or both Finneys knew or should have known his or their actions would induce actual infringements. The burden of proof by a preponderance of the evidence rests on Applera. Michael Finney's and John Finney's personal liability for MJ's direct infringement, inducing of infringement, and contributory

47

infringement of the thermal cycler patents cannot be based on conduct occurring prior to the issuance of those patents, which is: for the '675 patent, claim 45 -- August 2, 1994, and for claim 17 and 33 of the reexamined patent -- May 1, 2001; for the '610 patent -- December 12, 1995; and for the '493 patent -- August 12, 1997.  You must consider Michael Finney's and John Finney's personal liability separately and make a separate finding with respect to each of them.

## WILLFUL INFRINGEMENT: MICHAEL AND JOHN FINNEY

If you find that Michael and/or John Finney induced MJ's infringement, you must then decide whether Applera has proved by clear and convincing evidence that such inducement by Michael and/or John Finney was willful.

Willful infringement is established where Applera has proved: (1) that Michael and/or John Finney was aware of Applera's patents;  and (2) that Michael and/or John Finney had no reasonable good faith basis for concluding that he or they did not induce MJ to infringe, induce infringement, or contribute to the infringement of Applera's patent, that is, Michael and/or John Finney knew about the patent and did not exercise due care to determine whether or not he or they were inducing infringement of it.

In deciding whether Applera has proved that Michael and/or John Finney willfully induced MJ's infringement, induced infringement, or contributory infringement of any of Applera's patents, you must consider the totality of the circumstances. The proper time for assessing willfulness starts at the time Michael and/or John Finney received notice of infringement and continues throughout the time he or they engaged in infringing conduct.

If a party has exercised due care, he may continue to induce allegedly infringing conduct and may present what in good faith he believes to be a legitimate defense.  Even if his defense proves unsuccessful, that fact alone cannot establish that his

49

infringement was willful.

One factor to consider with respect to whether Michael and/or John Finney acted in good faith and with due care in determining the willfulness of the induced infringement you found proved is whether they obtained and followed competent legal advice from an attorney after becoming aware of the PCR process or thermal cycler patents and before beginning or continuing the infringing activities you found proved.  A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers.  Whether a legal opinion was legally correct or not is irrelevant so long as it was sufficiently thorough in the context of all the circumstances, to instill a reasonable belief in the infringer that the patent might reasonably be held invalid, not infringed, or not enforceable.

Another factor in determining whether Applera has proved by clear and convincing evidence that Michael and/or John Finney induced MJ's infringement of the patents is your assessment of whether or not either or both of them copied the products or processes covered by the patent claims or whether as competitors of Applera, tried to match a product of Applera with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

50