UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 AUG 29 A 8:40
U.S. DISTRICT COURT
NEW HAVEN, CT

**Applera Corporation and Roche Molecular Systems, Inc., plaintiffs,**

**v.**

**MJ Research Inc. and Michael and John Finney, defendants.**

**3:98cv1201 (JBA)**

**Ruling on Motion to Amend the Judgment to Include Prejudgment Interest [Doc. # 1310]**

Applera moves to amend the judgment to include prejudgment interest pursuant to 35 U.S.C. § 284 on the $19,800,000 in compensatory damages that the jury awarded against defendants MJ Research, Inc. and Michael and John Finney (collectively "MJ"). Because almost one year passed between the date of the jury's verdict on April 2, 2004 and the date on which judgment entered on March 30, 2005, Applera's motion is granted.

Section 284 provides that a claimant is entitled to "damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court." The Supreme Court has explained:

> The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded. In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.

General Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983).

Defendants argue that the Court's enhancement of damages presumed that the jury declined to award prejudgment interest. Regardless of the validity of this argument, however, Applera seeks prejudgment interest only for the period following the jury's entry of verdict. Such an award is entirely proper.

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986) (citations omitted). In exercising this discretion, the Court "must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." Id. (citation and internal quotation marks omitted). At trial, plaintiff's expert Dr. Dov Frishberg, testified that he used the prime rate of interest to adjust the damage award for several reasons:

> Over time, as we are owing money, basically you are compensated in two ways. One, we are compensated by the fact we wait over time for that money, and our delay of our use of that money is a burden to us. We have been deprived of the ability to use it and we use it later. That's one of the reasons we get paid interest.
>
> Another reason that we pay interest is that over time, we bear the risk of maybe not being paid. If you are owed by the U.S. government, there is very little risk that, if it's a proper instrument, a U.S. government bond or bill, then you will be paid, and there is virtually no risk to that.
>
> However, Applera is being owed money by MJ, and MJ is a business that may not be able to pay, and over time, Applera, even if it believes in its claims here, and even if

> it believes that ultimately it will win the lawsuit, and even if it believes ultimately you will award these monies, over time, it has no assurances that MJ will, in fact, be there at every point in time to pay the money.
>
> So they bear that risk, and the risk that I apply, therefore, is a risk that is borne by a business that is borrowing money from a business, and in this case, a business is MJ borrowing the money from Applera, and I use the prime rate, which is the most common interest rate in terms of dollar amount, I wouldn't say in terms of business, but this is the rate that banks loan money to what they call their prime, their best, largest customers. . . . I believe it's conservative in the sense that if there was a situation that Applera would willingly lend money to MJ, I believe the rate would certainly be higher. MJ is a small company. It would be viewed through the eyes of financial analysts, I believe largely as a single-product company, and I think that the rate that a bank would lend to MJ would be higher than the rates that they would lend money to let's say General Electric, but what I've used is what banks would lend to a company like General Electric.

Trial Tr. Vol X [Doc. # 1108] at 2050-52.

Defendant's expert, Dr. Franklin Fisher, testified in contrast that the three-month Treasury bill, which is the "risk-free interest rate" when you lend to the United States Government, would provide the appropriate benchmark for calculating interest. Trial Tr. Vol. XI [Doc. # 1109] at 2351-52.

The Court finds Dr. Frishberg's reasons for using the prime rate of interest to be persuasive, and therefore will apply the prime rate, as reported by the Federal Reserve Bank of New York, available at http://www.federalreserve.gov/releases, in calculating the prejudgment interest. Monthly rather than quarterly compounding of interest is appropriate, moreover, because monthly compounding would more precisely capture the

frequent changes in the prime rate.[1] The total interest awarded for the period between April 2, 2004 and March 30, 2005 is therefore calculated as follows:

| Months | Amount | Yearly Prime Rate | Monthly Rate | Interest | Principal + Interest |
|---|---|---|---|---|---|
| Apr. 2004 | 19,800,000.00 | 4.00% | 0.33% | 66,000.00 | 19,866,000.00 |
| May 2004 | 19,866,000.00 | 4.00% | 0.33% | 66,220.00 | 19,932,220.00 |
| Jun. 2004 | 19,932,220.00 | 4.00% | 0.33% | 66,440.73 | 19,998,660.73 |
| Jul. 2004 | 19,998,660.73 | 4.25% | 0.35% | 70,828.59 | 20,069,489.32 |
| Aug. 2004 | 20,069,489.32 | 4.50% | 0.38% | 75,260.58 | 21,144,749.91 |
| Sept. 2004 | 20,144,749.91 | 4.75% | 0.40% | 79,739.64 | 20,224,489.54 |
| Oct. 2004 | 20,224,489.54 | 4.75% | 0.40% | 80,055.27 | 20,304,544.81 |
| Nov. 2004 | 20,304,544.81 | 5.00% | 0.42% | 84,602.27 | 20,389,147.08 |
| Dec. 2004 | 20,389,147.08 | 5.25% | 0.44% | 89,202.52 | 20,478,349.60 |
| Jan. 2005 | 20,478,349.60 | 5.25% | 0.44% | 89,592.78 | 20,567,942.38 |
| Feb. 2005 | 20,567,942.38 | 5.50% | 0.46% | 94,269.74 | 20,662,212.12 |
| Mar. 2005 | 20,662,212.12 | 5.75% | 0.48% | 99,006.43 | 20,761,218.55 |

Accordingly, Applera's motion to amend the judgment to include prejudgment interest [Doc. # 1311] is GRANTED, and prejudgment interest in the total amount of $961,218.55 is awarded.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 26th day of August 2005.**

---

[1] MJ argues that quarterly compounding is appropriate because Applera received royalty payments every three months under the SAP. The schedule for receiving royalty payments under the SAP, however, has no bearing on the calculation of prejudgment interest from the date of the jury's verdict.