UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Applera Corporation and          :
Roche Molecular Systems, Inc.,   :
    plaintiffs,                  :
                                 :
v.                               :      3:98cv1201 (JBA)
                                 :
MJ Research Inc. and Michael     :
and John Finney, defendants.     :

**Ruling on Motion for Entry of Permanent Injunction [Doc. # 1301];
Motion for Joinder of Bio-Rad Laboratories, Inc [Doc. # 1361]**

Applera seeks entry of a permanent injunction as to defendants' infringement of the asserted claims of Applera's U.S. Patent Nos. 5,333,675 ("'675 patent"), 5,656,493 ("'493 patent"), and 5,475,610 ("'610 patent").  The PCR Process patents (U.S. Patent Nos. 4,683,195, 4,683,202, and 4,965,188), which were also found infringed, are not the subject of this motion as these patents expired on March 28, 2005.

Title 35 U.S.C. § 283 provides that a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  This statute thus gives effect to the patent holder's right to exclude. Smith Int'l., Inc. v. Hughes Tool Co., 718 F.2d 1574, 1577 (Fed. Cir. 1983) ("The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent.").  "Without this injunctive power of the courts, the right to exclude granted by

1

the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined." Id. at 1577-78.

The Federal Circuit counsels:

> Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights.

Id. at 1581.

Although Section 283, by its terms, makes the issuance of an injunction discretionary, and "the trial court thus has considerable discretion in determining whether the facts of a situation require it to issue an injunction," Roche Products, Inc. v. Bolar Pharmaceutical Co., 733 F.2d 858, 865-66 (Fed. Cir. 1984), preempted on other grounds, 35 U.S.C. § 271(e)(1), there is a rebuttable presumption that an injunction shall issue once infringement has been established. See W.L. Gore & Associates, Inc. v. Garlock, Inc., 842 F.2d 1275, 1281 (Fed. Cir. 1988) ("[A]n injunction should issue once infringement has been established unless there is a sufficient reason for denying it.").

### A. Timeliness of Motion

Defendants argue first that Applera's motion should be denied as untimely, as it was raised by motion after the Court's entry of judgment. Because plaintiffs sought injunctive relief

2

in their complaint, and this Court entered judgment on the same day that it ruled on defendants' double patenting and inequitable conduct defenses, before which Applera would not have been entitled to a permanent injunction, plaintiff's motion cannot be viewed as untimely.  Cf. Harolds Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533, 1541 (10th Cir. 1996) ("[A] district court order that resolves claims for damages presented to a jury at trial but fails to dispose of a claim for injunctive relief before the district court does not constitute an appealable final decision . . .").

### B.  Impact of Sale of MJ to Bio-Rad

Defendants also argue that a permanent injunction against them would be improper in light of the sale of MJ to Bio-Rad Laboratories, Inc. ("Bio-Rad") on August 18, 2004.  According to defendants, "MJ products are now marketed and sold under Bio-Rad's name and trademarks.  Since Bio-Rad has assumed full ownership and control of MJ's assets, Michael and John Finney no longer have any interest in MJ or say in the company's management or affairs.  The brothers have exited the thermal cycler business and are bound by a non-compete agreement with Bio-Rad not to re-enter."  Defendants' Mem. of L. in Opp. to Applera's Motion [Doc. # 1320] at 3.  Defendants note that Bio-Rad is a member of Applera's Supplier Authorization Program, through which it has been granted a license conveying rights under the '675 and '493 patents, and claims 160-63 of the '610 patent.  Thus, defendants

3

assert, the equities on balance support denial of Applera' injunction request because there is no longer any harmful activity or "continuing infringement" by MJ or the Finneys to enjoin.  Any remaining dispute, defendants contend, is between Applera and Bio-Rad, and is beyond the scope of the current proceeding, as Bio-Rad is a non-party and the license between Applera and Bio-Rad contains a forum selection clause selecting New York courts.

The sale of MJ to Bio-Rad neither changes the equities in favor of issuance of a permanent injunction nor materially affects the parties' rights and obligations.  First, as to defendants' argument that they will not continue to infringe, the Federal Circuit has indicated:

> The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place.  As explained in General Electric Co. v. New England Electric Mfg. Co., 128 F. 738 (2d Cir. 1904): 'The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him....' Id. at 740.

W.L. Gore & Associates, 842 F.2d at 1281.

Here, it remains uncertain whether further infringement will take place, because there continues to be a dispute about whether and to what extent Bio-Rad's license covers MJ's thermal cyclers. It appears undisputed, for example, that Bio-Rad's license with Applera does not cover products infringing claims 1, 44, and 158

of the '610 patent.  Bio-Rad's efforts to make royalty payments on behalf of the MJ thermal cyclers it is selling may well be evidence of its good faith effort to avoid infringement; Applera, however, relies on the limitation in its license agreement with Bio-Rad permitting Bio-rad "to use and to sell thermal cyclers and add-on and substitute blocks to end users under the Thermal Cycler Supplier's name and trademarks but not otherwise to sell or distribute to thermal cycler suppliers," and states that the thermal cyclers are being sold under MJ's trademarks. Thermal Cycler Supplier Agreement [Doc. # 1321, Ex. 10] at ¶ 2.1.  In light of the ongoing dispute about licensing, there is no guarantee that no future infringement will take place.[1]

Applera's argument that joinder of Bio-Rad under Fed. R. Civ. P. 25(c) is necessary to avoid continued infringement also fails, because Bio-Rad, as a successor in interest to MJ, is properly within the scope of an injunction issued in this case.

---

[1] Defendants have not argued that Applera has refused to license MJ's thermal cyclers, and Applera, in its response, asserts only that Bio-Rad's existing license does not cover MJ's thermal cyclers or the patents in suit.  Whether a selective refusal to license would change the balance of equities is thus not before this Court.  Cf. Allied Research Products, Inc. v. Heatbath Corp., 300 F. Supp. 656, 657 (D.C. Ill. 1969).
Defendants instead state that "Applera is presumably seeking by this relief to gain leverage in its settlement and licensing negotiations with Bio-Rad." Defs.' Mem. L. in Opp. to Applera's Motion [Doc. # 1320] at 14.  Applera, however, is entitled to an injunction against defendants based on the jury's infringement verdict, and the injunction merely enforces its rights as a patent holder.  Any "leverage" gained by an injunction therefore is not inequitable.

In purchasing MJ, Bio-Rad expressly assumed MJ's liabilities to plaintiffs.  See Bill Of Sale [Doc. # 1321, Ex. 4]; Claims Satisfaction Agreement [Doc. # 1321, Ex. 3] at 3.

The Federal Circuit considered an analogous issue in Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565, 1581 (Fed. Cir. 1986), overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004). There, the district court enjoined "each of the defendants, their officers, agents, servants, employees, successors in interest and assigns," and others acting in concert with them from infringing plaintiff's patents, finding it unnecessary to join Kloster under Fed. R. Civ. P. 25(c).[2]  The Federal Circuit rejected Kloster's argument on appeal that the inclusion of "successors in interest and assigns" would evade the limitations on the scope of injunctions in Fed. R. Civ. P. 65(d),[3] noting that the Supreme

---

[2]Rule 25(c) provides: "in case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."  "The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party and the judgment will be binding on his successor in interest, even though he is not named." 7C C. Wright & A. Miller, Federal Practice and Procedure, § 1958, at 555 (1986).

[3]Fed. R. Civ. P. 65(d) provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Court has found successors in interest properly enjoined under Rule 65. Id. at 1583 (citing Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945); Golden State Bottling Co. v. NLRB, 414 U.S. 168, 180 (1973)).  In Golden State Bottling, for example, the Supreme Court held the successor party before it, as "a bona fide purchaser, acquiring, with knowledge that the wrong remains unremedied . . . may be considered in privity with its predecessor for purposes of Rule 65(d)."  The Court reasoned:

> Rule 65(d)is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. Persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment, despite a lack of knowledge.

414 U.S. at 180 (citations and internal quotation marks omitted).

Drawing from the Supreme Court's reasoning, the Federal Circuit in Kloster approved the injunction as applying to Kloster as a successor, because "Kloster is the successor-operator of Stora assets used to produce infringing products." Id. at 1583; see also id. ("Courts have repeatedly found privity where, after a suit begins, a nonparty acquires assets of a defendant-infringer.").

Because Bio-Rad has expressly agreed to accept the liabilities of MJ, an injunction issued pursuant to Rule 65(d) would properly extend to it as a successor in interest, and joinder of Bio-Rad pursuant to Rule 25(c) is unnecessary.  There

is no basis for anticipating, moreover, that Bio-Rad would endeavor to avoid the injunction or avoid licensing the MJ thermal cyclers it is selling.

Accordingly, Applera' Motion for Joinder of Bio-Rad Laboratories, Inc. [Doc. # 1361] is DENIED. Based on the jury's findings of infringement, the Court finds that Applera will suffer irreparable harm if defendants' infringement is not enjoined. Absent any compelling equities in defendants' favor, Applera's motion for a permanent injunction [Doc. # 1301] is GRANTED.

It is hereby ordered that:

1. Claims 17, 33, and 45 of Applera's U.S. Patent No. 5,333,675 (the '675 Patent) are valid and enforceable and are infringed by MJ Research, Inc.

2. Claim 16 of Applera's U.S. Patent No. 5,656,493 (the '492 Patent) is valid and enforceable and is infringed by MJ Research, Inc.

3. Claims 1, 44, and 158 of Applera's U.S. Patent No. 5,475,610 (the '610 Patent) are valid and enforceable and are infringed by MJ Research, Inc.

4. Michael Finney and John Finney induced MJ Research Inc.'s infringement of the Infringed Claims.

5. Defendants MJ Research, Inc., Michael Finney, and John Finney, together with their subsidiaries, affiliated companies, successors, assigns, officers, directors, agents, servants,

employees, representatives, and attorneys, and those persons in active concert or participation with them who receive notice hereof, are hereby immediately and permanently restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), from making, using, offering for sale or selling in the United States, or importing into the United States, or causing to be made, used, offered for sale, or sold in the United States, or imported into the United States, any products found at trial to directly infringe claim 45 of the '675 patent and claims 1, 44, and 158 of the '610 patent.  Defendants are further permanently restrained and enjoined from contributing to the infringement of the claim 45 of the '675 patent and claims 1, 44, and 158 of the '610 by selling, offering to sell, or importing into the United States any products found to infringe at trial.  In addition, defendants are permanently enjoined from inducing others to infringe claim 17, 33, and 45 of the '675 patent, claim 16 of the '493 patent, and claim 1, 44, and 158 of the '610 patent, including, for example, by encouraging, urging, aiding, assisting, causing, facilitating, instructing, teaching, advertising, servicing, repairing, other otherwise promoting the use of the Infringing Products for use with the polymerase chain reaction (PCR).

    6.  Defendants shall forthwith provide written notice of this judgment, and the injunction ordered herein, to: their officers, directors, agents, servants, representative, attorneys,

employees, subsidiaries, and affiliates, and those persons in active concert or participation with them, and to all other persons or entities involved in any way with the making, using, selling, offering for sale, importing, advertising, or promotion of any infringing products.  Defendants shall take whatever means are necessary or appropriate to ensure that this order is properly complied with.

      7.  This Court retains jurisdiction to enforce any and all aspects of this Judgment and Order.

                                IT IS SO ORDERED.

                                      /s/

                            Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 30th day of August, 2005.**